REMINGTON & SHERMAN CO. v. BLAZOSSECK.

(Circuit Court of Appeals, Third Circuit. June 29, 1906.)

No. 38.

MASTER AND SERVANT—ACTION FOR INJURY TO SERVANT—QUESTIONS FOR JURY.
    Where plaintiff, an unskilled and practically inexperienced man who had been employed as a laborer in defendant's shops for some three months, was directed to assist in unlacing a belt which had been thrown off the pulleys but hung upon the revolving main shaft, was injured by the catching and winding up of the belt on such shaft, and there was evidence tending to show that such catching was due to a set screw on the shaft which projected to an unusual length, the question of defendant's negligence, either in allowing the screw to so project or in permitting plaintiff to undertake the unlacing of the belt without further instruction or caution, was one for the jury.

    [Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, § 1017.]

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

See 141 Fed. 1022.

Frank P. Prichard, for plaintiff in error.

George Demming, for defendant in error.

Before DALLAS and GRAY, Circuit Judges, and BRADFORD, District Judge.

GRAY, Circuit Judge. Thomas Blazosseck, the defendant in error and plaintiff below, brought an action of trespass against the Remington & Sherman Company, the defendant below, to recover damages for injuries alleged to have been sustained by him, by reason of the negligence of the defendant, while he was employed by it as a laborer. Plaintiff had been originally employed as a helper in the carpenter shop, and in that capacity had been in defendant's service for nearly a year, when, two or three months before the accident in question, he was transferred to the machine shop, where his duties were those of an ordinary laborer up to the time of the accident. In the machine shop where plaintiff worked, there was a main shaft and counter-shafting, and belts ran from one to the other. They revolved around the pulleys on the shafts, thereby communicating motion to the machinery connected with the counter-shafting. When the shafting or machinery connected with it was being repaired, or the belts themselves were being laced or unlaced, the belts were thrown off the pulleys, and in consequence hung loosely on the revolving shafts. The belt here in question was what was called a "small" one, about two inches in width and three-eighths of an inch in thickness, and extended from the pulley on the main shaft to a pulley on the counter-shaft, 14 feet away. The belt itself, when looped around the pulleys on the two shafts, stretched for a distance of 16 feet, the total length of the belt being 32 feet. Plaintiff had, on more than one occasion, assisted in lacing or unlacing the belts, when thrown off the pulleys and loosely held by the revolving shafts. The first time that he assisted in this work, he spoke to the boss about having the machinery stopped. The boss, however, refused to stop it, told him there was no danger, and, placing a heavy piece of iron on the belt lying on the floor, proceeded to take the lacing out and the belt down. The plaintiff says, however, that the boss told him the next time not to put the iron on the belt as it lay on the floor. This particular belt ran over a pulley on the counter-shafting, at one end thereof and outside the support, so that when the belt was thrown off of the pulley on that side, there was no shaft for it to fall upon, and it fell upon the floor. At the time of the accident, the belt had been so thrown off of the pulley on the counter-shaft, and was resting in its doubled shape for about six feet on the floor. It hung on the main shaft, which was revolving, which caused the belt to move around the shaft irregularly. The plaintiff had been assisting the machinist on this occasion in removing the belt from the pulleys, and, approaching the portion of the belt extending to the floor, took hold of it with one hand to stop its motion, for the purpose of unlacing it, at the same time reaching backwards with his other hand for a piece of iron to place on the bight that lay upon the floor. While in this position, the belt was in some way caught on the shaft, and becoming entangled with the plaintiff's legs, whirled him against the shaft, whereby the injuries complained of were inflicted.

On the main shaft, which was high above the floor, there was a coupling, the nearest end of which was 17 inches from the pulley on which the belt, when in normal position, revolved. The coupling was a cylindrical iron sleeve over the shaft, to which it was tightened by two screws which ran parallel with the shaft, and when screwed up tight, projected only about a quarter of an inch from the end of the sleeve along the shaft. It was in evidence that one of the screws in this particular sleeve projected three quarters of an inch instead of a quarter of an inch, and the theory, founded upon the facts of the case, is that when plaintiff took hold of the belt, towards its lower end, and holding it with one hand reached down for the piece of iron on the floor back of him, the belt slid along the shaft the 14 or 15 inches that separated the nearest edge of the belt from the projecting screw, the head of which was about five-eighths of an inch from the shaft, and became jammed thereunder, and that the swiftly revolving shaft wound up the belt and whirled the plaintiff, who had become entangled therein, from the floor.

The defendant proved that the shafting and couplings were furnished by a reputable firm and were, in material and structure, up to the highest standards in the trade; that the coupling in particular was of an improved kind, and that the shafting and pulleys had been properly and carefully set. It was however proved that one of the two set screws in the end of the coupling, as described, had been put in by a carpenter and not by a machinist, and instead of being fully screwed in until the head only projected a quarter of an inch, it projected three-quarters of an inch, parallel to the shaft and a half to five-eighths of an inch therefrom. There was evidence to go to the jury that, in lacing and unlacing and adjusting these "small" belts, the rule of the shop was not to stop the machinery, but to throw the belts off the pulleys, allowing them to hang on the swiftly revolving shafts.

We have thus summarized the salient and material parts of the testimony. Counsel for defendant moved the court to instruct the jury that, under all the evidence, they should find a verdict for the defendant, and after the verdict in favor of the plaintiff, moved for judgment in its favor, non obstante veredicto on the point reserved. On the refusal of these motions, the two assignments of error are based.

In submitting the case to the jury, the learned judge of the court below discussed the question of contributory negligence, and submitted the same to the jury for its determination. In this, we think the learned trial judge was clearly right. The evidence on this point was not of a character to justify the court in deciding as a matter of law that the plaintiff was guilty of contributory negligence, and counsel for plaintiff in error do not urge that it should have done so. Their contention, on the other hand, is, to quote their own language, that:

"This case resolves itself into a single question, namely, whether the defendants below, the Remington & Sherman Company, were in any way responsible for the act of the plaintiff, their employé, in seizing the end of a revolving

belt and holding on to it with his left hand while he was reaching about and looking for a weight to put on it."

The only question, however, raised by the assignments, is the primary one—was there any evidence in the case which would warrant the jury in finding that the injuries complained of by the plaintiff were caused by the negligence of the defendant? In discussing this question, we must eliminate all consideration of contributory negligence by the plaintiff, which seems to be involved in the phrasing of plaintiff's point, as quoted above. It is not, whether defendant was in any way responsible for the act of the plaintiff in seizing the end of the revolving belt and reaching for the iron. In determining the question in that form, we are liable to be embarrassed, by considering whether the plaintiff's conduct contributed to the accident,—a question which, as we have seen, was properly submitted to the jury for decision in case primary negligence of defendant was found. The question then recurs, was there any evidence upon which such primary negligence could be predicated? On this question of defendant's negligence, the learned trial judge said:

"As far as I understand the case, the only negligence upon which the plaintiff's case can rest, is concerning this set screw. Did it project to a dangerous degree or distance beyond this collar? If it did, was that the cause of the accident? And if so, if the defendant was negligent in that respect, and if the negligence of the defendant caused the plaintiff's injuries, the plaintiff may recover."

We think this view of what might constitute negligence on the part of the defendant in the premises was unduly narrow, and that the jury were justified, on broader grounds, in finding a verdict of guilty against the defendant. Not only was the question, whether negligence could be imputed to defendant from the fact that the set screw, projecting as it did, made the danger possible, properly before the jury, but also the question whether the defendant was guilty of negligence in permitting a somewhat inexperienced and unskilled laborer, without more instruction or caution or supervision than seems to have been bestowed upon him, to undertake the unlacing of a belt hanging loosely upon a rapidly revolving shaft, under the circumstances testified to in the case. While the question was a close one, it was not beyond the scope of legitimate inquiry by the jury, whether the defendant had discharged its whole duty to such an employé, under the circumstances detailed in the testimony, in enforcing the rule that the belts were to be unlaced, repaired or adjusted while the shafts and pulleys were in motion. This question, with all the attendant circumstances, such as the inexperience of the plaintiff, his grade of service as a laborer, and the scant instruction given him, was before the jury, and was for their consideration. Having been determined by them, we are not able to convince ourselves that the verdict should have been set aside, and therefore we cannot agree that the jury should have been given binding instructions in favor of the defendant.

The judgment below is therefore affirmed.